WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Elizabeth N. Feliz,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner of Social Security<br><br>    Defendant. | No. CV-12-02196-PHX-BSB<br><br>**ORDER** |

  Elizabeth N. Feliz (Plaintiff) seeks judicial review of the final decision of the Commissioner of Social Security (the Commissioner), denying her application for disability insurance benefits under the Social Security Act (the Act). The parties have consented to proceed before a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b) and have filed briefs in accordance with Local Rule of Civil Procedure 16.1.[1] For the following reasons, the Court reverses the Commissioner's decision and remands for an award of benefits.

**I. Procedural Background**

  On October 21, 2009, Plaintiff applied for disability insurance benefits under Title II of the Act. 42 U.S.C. § 401-34. (Tr. 142.)[2] Plaintiff alleged that she had been

---

[1] The Court finds this matter suitable for resolution on the briefing and, therefore, denies Plaintiff's request for oral argument.

[2] Citations to "Tr." are to the certified administrative transcript of record. (Doc 14.)

disabled since May 4, 2009, due to abdominal cutaneous nerve entrapment syndrome (ACNES). (Tr. 142-43, 177.) After the Social Security Administration (SSA) denied Plaintiff's initial application and her request for reconsideration, she requested a hearing before an administrative law judge (ALJ). (Tr. 85-86.) After conducting a hearing, the ALJ issued a decision finding Plaintiff not disabled under the Act. (Tr. 15-21.) This decision became the final decision of the Commissioner when the Social Security Administration Appeals Council denied Plaintiff's request for review. (Tr. 1-5); *see* 20 C.F.R. § 404.981 (explaining the effect of a disposition by the Appeals Council.) Plaintiff now seeks judicial review of this decision pursuant to 42 U.S.C. § 405(g).

## II.   Medical and Opinion Evidence

The record before the Court establishes the following history of diagnosis and treatment related to Plaintiff's physical health. The record also includes opinions from state agency physicians who either examined Plaintiff or reviewed the records related to her physical, but who did not provide treatment.

### A.   Treatment Records

In May 2009, Plaintiff saw Glenn Lipton, M.D., at Northern Arizona Interventional Pain Management (Arizona Pain Management) with complaints of abdominal pain. (Tr. 253-55, 273.) She reported to Dr. Lipton that she had a history of abdominal pain, and that it was exacerbated after she opened a door at work on May 4, 2009 (her alleged onset date). (Tr. 253.) Dr. Lipton noted that an April 2008 MRI and an April 2008 ultrasound of Plaintiff's abdomen both were normal. (Tr. 255.) He suspected chronic ACNES, prescribed medication for nerve pain (gabapentin), and ordered a lumbar MRI. (Tr. 253-55.) Dr. Lipton directed Plaintiff to "discontinue any activity which triggered an increase in her pain." (Tr. 255.) The MRI showed some joint disease (arthropathy), mild degenerative disc disease, some cysts, and mild scoliosis. (Tr. 256-57 (duplicated at Tr. 260-61).)

In June 2009, Plaintiff saw her primary care physician Daniel Goldsmith, M.D., and reported increased abdominal pain when opening and closing her car doors.

(Tr. 272.) She also reported suffering from allergies and neck pain. (*Id.*) That same month, Plaintiff returned to Dr. Lipton for an evaluation of her abdominal pain. (Tr. 251.) Dr. Lipton increased her dosage of gabapentin and recommended that she continue using Lidoderm (a lidocaine patch). He also encouraged her to continue taking antidepressants that Dr. Goldsmith had prescribed and to undergo massage therapy treatments. (Tr. 251-52.) Dr. Lipton assessed Plaintiff with, among other things, severe abdominal pain and ACNES. (Tr. 251.)

In July 2009, Plaintiff went to the Maricopa Integrated Health System outpatient center with complaints of chronic abdominal pain. (Tr. 241-42.) A treatment note signed by medical assistant (MA) Susan King and John Porter, M.D., notes that Plaintiff had constant abdominal pain that was exacerbated by certain movements including pushing and pulling. (Tr. 421.) The treatment note further stated that MA King and Dr. Porter did not "see any significant resolution of the problem." (Tr. 242.) Plaintiff returned to Dr. Goldsmith with similar complaints that month. (Tr. 271.) Dr. Goldsmith noted that "all lifting" more than "approx[imately]" two pounds caused pain. (*Id.*) He also noted that Plaintiff had pain pushing and pulling objects such as doors and boxes, and that stepping up and down also caused pain. (*Id.*) Dr. Goldmsith noted that gabapentin was not helping Plaintiff's pain and that only a Lidoderm patch provided some relief. He described Plaintiff's prognosis as "poor." (*Id.*) In August 2009, Plaintiff returned to Dr. Lipton for follow up. He recommended that she pursue behavioral medicine to learn coping techniques for chronic pain. (Tr. 249-50.)

Plaintiff continued seeing Dr. Goldsmith for her abdominal pain approximately once a month for the remainder of 2009. (Tr. 267-70, 299.) Abdominal and renal ultrasounds during that time were normal. (Tr. 262.) During an August 10, 2009 appointment, Dr. Goldsmith noted that Plaintiff had "occas[ional]" abdominal pain and that she continued to experience pain when "pulling car door closed or pushing it closed," when leaving the car, and when squatting. (*Id.*) Dr. Goldsmith advised Plaintiff to avoid painful activities but to "remain physically active as tolerated." (Tr. 270.)

In June 2010, Plaintiff went to the Center for Family Medicine with complaints of left ankle pain following activity on a treadmill the previous week. (Tr. 340-45 (duplicated at Tr. 346-47).) Later that month, Plaintiff reported that her ankle pain was gradually improving, and an ankle x-ray showed no obvious fracture. (Tr. 332-33.) Treatment notes from July 2010 indicate that Plaintiff had some left calf atrophy, but that she was walking well. (Tr. 322.) An MRI of Plaintiff's left ankle in August 2010 showed some tendonopathy and mild diffuse thickening. (Tr. 324-25, 332.)

In August 2010, Plaintiff returned to the Center for Family Medicine with complaints of abdominal pain related to constipation. Doctors recommended a stool softener. (Tr. 334-39.) In October 2010, a lumbar x-ray showed some moderate scoliosis and an exaggerated spinal curve (hyperlordosis). (Tr. 401.) Similarly, a lumbar MRI showed moderate to severe lordotic exaggeration at L3-S1, mild to moderate facet degenerative joint disease at L1-S1, and mild right narrowing (stenosis) at L4-L5, but no disc extrusion, narrowing, or direct nerve root impact. (Tr. 399-400.)

**B.    Opinion Evidence**

**1.    Mark Brechelsen, D.O., State Agency Examining Physician**

In December 2009, Mark Brechelsen, D.O., examined Plaintiff in connection with her disability application. The examination showed normal gait, normal ranges of motion in all joints, and full (5/5) motor strength in all of Plaintiff's extremities. Dr. Brechelsen opined that there was no objective evidence or diagnosis to support Plaintiff's alleged disability despite some positive pain findings. He added that he was not familiar with the ACNES condition or diagnosis and that he would defer to a specialist in that area for "possible weight restrictions associated with the condition." (Tr. 278-81.)

**2.    Terry Ostrowski, M.D., State Agency Reviewing Physician**

In January 2010, Terry Ostrowski, M.D. reviewed Plaintiff's medical records and offered an opinion regarding her work-related physical limitations. He noted her complaints of ACNES, and also noted that records showed that she walked on a treadmill for forty-five minutes per day. He noted Dr. Brechelsen's opinion that Plaintiff did not

have any work-related limitations, but found that a limitation equivalent to light work was more reasonable. (Tr. 283-90.)

### 3. Dr. Goldsmith, Treating Physician

On December 24, 2010, Dr. Goldsmith completed two assessments of Plaintiff's ability to perform work-related physical activities. In one assessment, Dr. Goldsmith opined that Plaintiff's abdominal wall pain limited her abilities, that her symptoms (pain) lasted three or more hours, that physical activity increased her symptoms and rest reduced her symptoms. (Tr. 326-27.) Dr. Goldsmith described Plaintiff's limitations as "moderately severe" and stated that they "could reasonably be expected to result from objective or diagnostic clinical findings" documented in the medical record. (Tr. 327.) In the second assessment, Dr. Goldsmith opined that Plaintiff could sit for six hours in an eight-hour workday, stand and/or walk for four hours in an eight-hour workday, lift and/or carry less than ten pounds, continuously use her hands and feet, and occasionally bend, crawl, climb, reach, stoop, balance, crouch, and kneel. (Tr. 328.) He concluded that Plaintiff could not perform work for eight hours per day, five days per week due to her abdominal pain "caused by many movements and lifting." (Tr. 329.) He added that Plaintiff's symptoms caused "moderately severe" limitations on her ability to perform work-related activities. (*Id.*)

## III. Administrative Hearing Testimony

Plaintiff appeared with counsel and testified at the March 2011 administrative hearing. (Tr. 26.) She was in her late thirties at the time. She had a bachelor's degree, and her past relevant work included massage therapist and customer service representative at Verizon. (Tr. 31, 51, 188-91.)

Plaintiff testified that the Lidoderm patch, which she used every night, helped relieve her abdominal pain. (Tr. 34.) She stated that lifting more than two pounds, pushing, pulling, and lifting from the floor aggravated her abdominal pain. (Tr. 34, 39-40, 42-43.) Plaintiff stated that she could stand for seventy-five minutes before needing to sit down and rest, and that her abdominal pain affected her ability to walk "[a]t times."

1  (Tr. 38-39.)  She testified that she did some household chores (including dishes, cooking,
2  dusting, and making the bed), but that she could not do laundry, vacuum, sweep, take out
3  the trash, or grocery shop for more than very light things (such as an eight-ounce box of
4  cocoa).  (Tr. 45-47.)  She further stated that she had intense "abdominal pain flare[s]" that
5  lasted for up to three days and required her to lie down for three to four hours at a time,
6  two to three days a week.  (Tr. 34-37.)

7  Vocational expert Mark Kelman also testified at the hearing.  The vocational
8  expert testified that Plaintiff's past relevant work consisted of sales/customer service
9  representative at Verizon and massage therapist.  (Tr. 53.)  He initially classified the
10 sales/customer service work as light exertional work and the massage therapist work as
11 medium exertional work.  He later clarified that Plaintiff's work at Verizon, as she
12 described it, was a customer service representative, which was classified as sedentary
13 work under the Dictionary of Occupational Titles (DOT).  (DOT § 241.367-014) (Tr. 54.)

14 The vocational expert testified that a hypothetical individual of Plaintiff's age,
15 education, and work history who could perform a range of sedentary work as opined by
16 Dr. Goldsmith ─ involving sitting for six hours out of an eight-hour workday, standing
17 and/or walking for four hours out of an eight-hour workday, lifting and carrying less than
18 ten pounds, and occasionally bending, crawling, climbing, reaching, stooping, balancing,
19 crouching, and kneeling ─ could perform Plaintiff's past work as a customer service
20 representative.  (Tr. 55.)  The vocational expert further testified that the hypothetical
21 individual could still perform Plaintiff's past relevant work as a customer service
22 representative if the hypothetical individual were further limited to lifting only two to
23 three pounds, never climbing steep stairs, never lifting from the floor, and never working
24 overhead.  (Tr. 55-56.)  However, if the individual experienced moderately severe pain
25 (as Plaintiff testified and Dr. Goldsmith opined), the vocational expert testified that such
26 an individual could not perform any work.  (Tr. 56.)  The vocational expert also testified
27 that a need to rest for one hour or more during an eight-hour day would prelude sustained
28 work.  (Tr. 56-57.)

**IV. The ALJ's Decision**

A claimant is considered disabled under the Social Security Act if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 42 U.S.C. § 1382c(a)(3)(A) (nearly identical standard for supplemental security income disability insurance benefits). To determine whether a claimant is disabled, the ALJ uses a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920.

**A. Five-Step Evaluation Process**

In the first two steps, a claimant seeking disability benefits must initially demonstrate (1) that she is not presently engaged in a substantial gainful activity, and (2) that her disability is severe. 20 C.F.R. § 404.1520(a),(c). If a claimant meets steps one and two, she may be found disabled in two ways at steps three through five. At step three, she may prove that her impairment or combination of impairments meets or equals an impairment in the Listing of Impairments found in Appendix 1 to Subpart P of 20 C.F.R. pt. 404. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is presumptively disabled. If not, the ALJ determines the claimant's residual functional capacity (RFC) before proceeding to step four. At step four, the ALJ determines whether a claimant's RFC precludes her from performing her past work. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant establishes this prima facie case, the burden shifts to the government at step five to establish that the claimant can perform other jobs that exist in significant number in the national economy, considering the claimant's RFC, age, work experience, and education. If the government does not meet this burden, then the claimant is considered disabled within the meaning of the Act.

**B. The ALJ's Application of Five-Step Evaluation Process**

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. (Tr. 17.) At

step two, the ALJ found that Plaintiff had the following severe impairments: "chronic abdominal cutaneous nerve entrapment causing abdominal wall pain, lumbar facet degenerative joint disease, and mild cervical degenerative joint disease." (Tr. 17.) At the third step, the ALJ found that the severity of Plaintiff's impairments did not meet or medically equal the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*.) The ALJ then found that Plaintiff retained the RFC "to perform sedentary work as defined in 20 CFR § 404.1567(a), with sitting [limited] to 6 hours per 8-hour workday, standing and walking [limited] to 4 hours per 8-hour workday with normal breaks, lifting and carrying [limited] to 2-3 pounds, occasional postural functioning with no climbing steep stairs, no lifting from the floor level, and no overhead work." (Tr. 17.) In arriving at this RFC, the ALJ gave "greater weight" to Dr. Goldsmith's opinion that Plaintiff could sit for six hours per day, stand/walk for four hours per day, and lift less than ten pounds. (Tr. 20.) However, the ALJ rejected Dr. Goldsmith's opinion that Plaintiff's pain was "moderately severe." (*Id*.) At step four, the ALJ concluded that Plaintiff could perform her past work as a customer service representative. (Tr. 21.) The ALJ concluded that Plaintiff was not disabled within the meaning of the Act. (*Id*.)

**V.  Standard of Review**

The district court has the "power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The district court reviews the Commissioner's final decision under the substantial evidence standard and must affirm the Commissioner's decision if it is supported by substantial evidence and it is free from legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Ryan v. Comm'r of Soc. Sec. Admin*., 528 F.3d 1194, 1198 (9th Cir. 2008). Even if the ALJ erred, however, "[a] decision of the ALJ will not be reversed for errors that are harmless." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

Substantial evidence means more than a mere scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted); *see also Webb v Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005). In determining whether substantial evidence supports a decision, the court considers the record as a whole and "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation and citation omitted).

The ALJ is responsible for resolving conflicts in testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). "When the evidence before the ALJ is subject to more than one rational interpretation, [the court] must defer to the ALJ's conclusion." *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004) (citing *Andrews*, 53 F.3d at 1041).

**VI.  Plaintiff's Claims**

Plaintiff asserts that the ALJ improperly weighed her subjective complaints, erred in weighing the medical source opinion evidence, and erred by concluding that Plaintiff could perform her past work. (Doc. 23.) Plaintiff asks the Court to remand this matter for a determination of disability benefits. In response, the Commissioner argues that the ALJ's decision is free from legal error and is supported by substantial evidence in the record. (Doc. 24.) For the reasons discussed below, the Court finds that the ALJ erred in rejecting Plaintiff's subjective complaints and that remand for a determination of benefits is warranted based on this error. Accordingly, the Court does not address Plaintiff's other claims of error.

    **A.  The Two-Step Credibility Analysis of Subjective Complaints**

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could

reasonably be expected to produce the pain or other symptoms alleged.'" *Id.* at 1036 (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). The claimant is not required to show objective medical evidence of the pain itself or of a causal relationship between the impairment and the symptom. *Smolen*, 80 F.3d at 1282. Instead, the claimant must only show that an objectively verifiable impairment "could reasonably be expected" to produce his pain. *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1282); *see also Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d at 1160-61 (9th Cir. 2008) ("requiring that the medical impairment could reasonably be expected to produce pain or another symptom . . . requires only that the causal relationship be a reasonable inference, not a medically proven phenomenon"). Second, if a claimant produces medical evidence of an underlying impairment that is reasonably expected to produce some degree of the symptoms alleged, and there is no affirmative evidence of malingering, an ALJ must provide "clear and convincing reasons" for an adverse credibility determination. *See Smolen*, 80 F.3d at 1281; *Gregor v. Barnhart*, 464 F.3d 968, 972 (9th Cir. 2006).

In evaluating a claimant's credibility, the ALJ may consider the objective medical evidence, the claimant's daily activities, the location, duration, frequency, and intensity of the claimant's pain or other symptoms, precipitating and aggravating factors, medication taken, and treatments for relief of pain or other symptoms. *See* 20 C.F.R. § 404.1529(c); *Bunnell*, 947 F.2d at 346. An ALJ may also consider such factors as a claimant's inconsistent statements concerning symptoms and other statements that appear less than candid, the claimant's reputation for lying, unexplained or inadequately explained failure to seek treatment or follow a prescribed course of treatment, medical evidence tending to discount the severity of the claimant's subjective claims, and vague testimony as to the alleged disability and symptoms. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008); *Smolen*, 80 F.3d 1273, 1284 (9th Cir. 1996). If substantial evidence supports the ALJ's credibility determination, that

1  determination must be upheld, even if some of the reasons cited by the ALJ are not
2  correct. *Carmickle*, 533 F.3d at 1162.

3  Relying on the Ninth Circuit decision in *Bunnell*, the Commissioner argues that an
4  ALJ need not provide "clear and convincing" reasons for discrediting a claimant's
5  testimony regarding subjective symptoms, and instead must make findings that are
6  "'supported by the record' and 'sufficiently specific to allow a reviewing court to
7  conclude the adjudicator rejected the claimant's testimony on permissible grounds.'"
8  (Doc. 24 at 12 n.5, 50 (citing *Bunnell*, 947 F.2d at 345-46).) In *Bunnell*, the court did not
9  apply the "clear and convincing" standard. Although the Ninth Circuit has not
10 overturned *Bunnell*, subsequent cases have elaborated on its holding and have accepted
11 the clear and convincing standard. *See Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d
12 1228, 1234 (9th Cir. 2011); *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009);
13 *Lingenfelter*, 504 F.3d at 1036; *Reddick*, 157 F.3d at 722; *Swenson v. Sullivan*, 876 F.2d
14 683, 687 (9th Cir. 1989). Accordingly, the Court will determine whether the ALJ
15 provided clear and convincing reasons for discounting Plaintiff's credibility.

16 **B.  Plaintiff's Pain and Symptom Testimony**

17 Because there was no record evidence of malingering, the ALJ was required to
18 provide clear and convincing reasons for concluding that Plaintiff's subjective complaints
19 were not wholly credible. The ALJ listed the following three factors in support of her
20 credibility assessment: the objective medical record did not substantiate the level of
21 disabling pain Plaintiff alleged, Plaintiff's pain was "under relatively good control" with
22 treatment, and her activities were inconsistent with the alleged level of pain. (Tr. 19.)

23 **1.  Objective Medical Record**

24 As to the first reason, the ALJ stated only that "the objective record supports a
25 finding that [Plaintiff] has pain, however, it does not substantiate the level of disabling
26 pain alleged by claimant." (Tr. 19.) The absence of fully corroborative medical evidence
27 cannot form the *sole* basis for rejecting the credibility of a claimant's subjective
28 complaints. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986) (it is legal error

for "an ALJ to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings"), *superseded by statute on other grounds as stated in Bunnell v. Sullivan*, 912 F.2d 1149 (9th Cir. 1990); *see also Burch*, 400 F.3d at 681 (explaining that the "lack of medical evidence" can be "a factor" in rejecting credibility, but cannot "form the sole basis"); *Rollins v. Massanari*, 261 F.3d 853, 856–57 (9th Cir. 2001) (same). Thus, absent some other stated legally sufficient reason, the first basis of the ALJ's credibility determination cannot stand.

As discussed below, although the ALJ provided two other reasons for discrediting Plaintiff's subjective complaints that could constitute clear and convincing reasons in support of a credibility determination, these reasons are not supported by substantial evidence in the record and, therefore, do not support the ALJ's credibility determination in this case.

### 2. Symptoms Controlled by Treatment

The ALJ also discredited Plaintiff's subjective complaint testimony based on her finding that the record reflected that Plaintiff's pain was under "relatively good control with conservative treatment and not present all the time, as alleged by the claimant." (Tr. 19.) In support of that conclusion, the ALJ relied on treatment records related to Plaintiff's "left ankle pain [that] started in June 2010 after walking on a treadmill." (*Id.*) The ALJ noted that the record indicated that Plaintiff's 2003 tendon repair in her ankle was "expected to resolve." (Tr. 19.) Even if the medical record indicated that Plaintiff's past ankle injury was resolved, such evidence is not a clear and convincing reason for discrediting Plaintiff's symptom testimony because Plaintiff did not allege disability based on an ankle impairment.

The ALJ also discredited Plaintiff's subjective complaints of severe abdominal pain because she found that medication (a pain patch) "relatively" controlled her abdominal pain. (Tr. 19-20 (noting that although Plaintiff complained of chronic abdominal pain in April 2009, she also reported that she had done well with the use of a pain patch and that she used the pain patch at night).) Evidence that treatment can

1    effectively control an impairment may be a clear and convincing reason to find a claimant
2    less credible. *See* 20 C.F.R. §§ 404.1529(c)(3)(iv), 416.929(c)(3)(iv); *Warre v. Comm'r,*
3    *of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006) (stating that "[i]mpairments that
4    can be controlled effectively with medication are not disabling for purposes of
5    determining eligibility for SSI benefits."). Here, however, substantial evidence in the
6    record does not support the ALJ's conclusion. Although treatment notes indicate that a
7    Lidoderm patch helped with Plaintiff's pain and provided "some relief" (Tr. 270-71,
8    299), the treatment records reflect that Plaintiff consistently experienced "chronic
9    abdominal pain" that was often described a "severe."  (Tr. 242, 244, 249, 251, 269); *see*
10   *Lankford v. Astrue*, 2013 WL 416221, at *5 (N.D. Cal. Jan. 31, 2013) (concluding that
11   the ALJ's finding that a claimant's pain was controlled did not support his credibility
12   assessment because the ALJ failed to recognize that the medication did not resolve the
13   problem and claimant continued to complain of chronic pain).

14   Additionally, even though Dr. Goldsmith noted on July 9, 2009, that a Lidoderm
15   patch provided "some pain relief," that same treatment note described Plaintiff's
16   prognosis as "poor" and stated that she was "unlikely to respond to known treatment
17   modalities." (Tr. 271.) A treatment note from a few days earlier indicated that Plaintiff
18   had chronic pain and that there had been "no significant resolution" of the problem.
19   (Tr. 242.) Similarly, Dr. Goldsmith's September 14, 2009 treatment note indicated that
20   although Plaintiff had some pain relief when resting, her level of pain remained a six on a
21   ten-point scale when she was at rest. (Tr. 249.) The treatment records also reflect that
22   several medications that doctors had prescribed were ineffective at relieving Plaintiff's
23   abdominal pain. (Tr. 270-71.)

24             **3.**     **Plaintiff's Activities**

25   In discounting Plaintiff's credibility, the ALJ further noted that Plaintiff
26   "enjoy[ed] frequent hikes" and "walks on her treadmill regularly, which supports the
27   finding that her ankle impairment results in few or no limitations in overall functioning."
28   (Tr. 19 (citing administrative hearing exhibit 8F).) The ALJ also found that Plaintiff's

"simple walking" undermined her credibility regarding her allegation of disabling abdominal pain. (Tr. 19.)

Although an ALJ may rely on activities that "contradict claims of a totally debilitating impairment" to find a claimant less than credible, *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012), the ALJ's finding here is not supported by substantial evidence. Contrary to the ALJ's assertion, administrative hearing exhibit 8F (Tr. 298-320) does not mention hiking.[3] Additionally, although the record contains evidence that Plaintiff walked on a treadmill regularly (Tr. 185, 254, 299), the record indicates that Dr. Goldsmith advised Plaintiff to avoid painful activities, but to engage in "physical activity as tolerated." (Tr. 270.) Although Plaintiff could walk on a treadmill without an incline for about forty-five minutes per day (she estimated that she walked 1.3 miles in that time) (Tr. 185), other exercise triggered her abdominal pain. (Tr. 185, 299.) Plaintiff's limited walking on a treadmill, which was consistent with her doctor's advice that she exercise "as tolerated," is not inconsistent with her claims of severe abdominal pain. *See Vertigan v. Halter,* 260 F.3d 1044, 1050 (9th Cir. 2001) (claimant's ability to swim, do physical therapy, and exercise at home did not detract from claimant's credibility) *Clark v. Colvin*, 2013 WL 6189726, at *5 (W.D. Wash. Nov. 26, 2013) (concluding that claimant's swimming and stretching were not inconsistent with her reports of pain because her doctors encouraged her to exercise).

The ALJ also noted that Plaintiff drove a car, which the ALJ considered inconsistent with Plaintiff's report that she experienced abdominal pain when she lifted over two pounds because driving a car requires over two pounds of force. (Tr. 20.) Plaintiff's limited driving does not support the ALJ's adverse credibility determination. *See Vertigan*, 260 F.3d at 1049-50 (claimant's limited daily activities, including driving, did not detract from his credibility). As the ALJ noted in her decision, the record reflects

---

[3] Plaintiff states that although "[t]here is an indication in the record that she likes to hike," the record does not indicate whether she can hike or, if she does hike, how often. (Doc. 23 at 2 n.37.) Plaintiff did not cite to the place in the administrative record where hiking is mentioned, and the Court could not locate any mention of hiking in the record.

that Plaintiff "drives if she has an appointment to attend or errands she must complete," but that she "avoids driving in general." (Tr. 18-19.)

Considering the record as a whole, the Court concludes that substantial evidence does not support the ALJ's credibility determination. Accordingly, the Court will reverse the Commissioner's disability determination.

## VII. Remand for Benefits or for Further Proceedings

Having decided to vacate the Commissioner's decision, the Court has the discretion to remand the case for further development of the record or for an award benefits. *See Reddick*, 157 F.3d at 728. In *Smolen*, the Ninth Circuit held that evidence should be credited as true and an action remanded for an immediate award of benefits when the following three factors are present: (1) the ALJ failed to provide legally sufficient reasons for rejecting evidence; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.[4]  *Smolen*, 80 F.3d at 1292; *see Varney v. Sec. of Health & Human Servs.*, 859 F.2d 1396, 1400 (9th Cir. 1988) ( *Varney II* ) (stating that "[i]n cases where there are no outstanding issues that must be resolved before a proper determination can be made, and where it is clear from the record that the ALJ would be required to award benefits if the claimant's excess pain testimony were credited, we will not remand solely to allow the ALJ to make specific findings regarding that testimony."); *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir. 1989) ("In a recent case where the ALJ failed to provide clear and

---

[4] The Commissioner argues that the credit-as-true rule is inconsistent with the Act and with the dissenting opinion in *Vasquez v. Astrue*, 572 F.3d 572, 586 (9th Cir. 2009) (O'Scannlain, J., dissenting) (stating that the Commissioner's argument that the "credit-as-true" rule is invalid as contrary to the statute and Supreme Court precedent appeared "strong."). (Doc. 24 at 21 n.8.) However, the dissent in *Vasquez* also noted that "because the crediting-as-true rule is part of [the Ninth] circuit's law, only an en banc court can change it." *Vasquez*, 572 F.3d at 602 (O'Scannlain, J. dissenting). This Court cannot ignore the credit-as-true rule based on the Commissioner's claims that it conflicts with the Social Security Act and usurps the ALJ's role as finder of fact. (Doc. 24 at 21).

1 convincing reasons for discounting the opinion of claimant's treating physician, we
2 accepted the physician's uncontradicted testimony as true and awarded benefits.") (citing
3 *Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987)).  The Ninth Circuit has frequently
4 reaffirmed that improperly rejected evidence should be credited as true.  *See Harman v.*
5 *Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *Lester*, 81 F.3d at 834; *Reddick*, 157 F.3d at
6 729; *McCartey v. Massanari*, 298 F.3d 1072, 1076–77 (9th Cir. 2002).

The Court has found that the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's subjective complaints.  There are no outstanding issues to be resolved before a disability determination may be made because the vocational expert's testimony in response to questions related to Plaintiff's subjective complaints established that the ALJ would be required to find Plaintiff incapable of any sustained work and thus disabled if Plaintiff's testimony were credited as true.  (*See* Tr. 56-58.)  Thus, "a remand for further proceedings would serve no useful purpose."  *Reddick*, 157 F.3d at 730.  On the record before the Court, Plaintiff's subjective complaints of disabling pain should be credited as true and the case remanded for an award of benefits.[5]  *See Smolen*, 80 F.3d at 1284.

Accordingly,

**IT IS ORDERED** that the Commissioner's decision denying benefits is **reversed** and that this matter is **remanded** for an award of benefits.

/ / /

/ / /

/ / /

---

[5] In reaching this conclusion, the Court notes that an ALJ cannot find disability based solely on the claimant's testimony.  Rather, there must also be medically acceptable clinical or laboratory evidence that "could reasonably be expected to produce the pain or other symptoms alleged."  42 U.S.C. § 423(d)(5)(A).  Here, it is not disputed that Plaintiff has a medical impairment that could reasonably be expected to cause the alleged symptoms.  (Tr. 19 ("After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms").)  Rather, the issue is the "intensity and persistence" of those symptoms, which may be established by "statements of the individual or his physician."  42 U.S.C. § 423(d)(5)(A).

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this case.

Dated this 5th day of March, 2014.

*Bridget S. Bade*
Bridget S. Bade
United States Magistrate Judge